UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| *IN RE*: DAVID PATRICK KEATING | CIVIL ACTION NO. 6:16-MC-00005 |
| | CHIEF JUDGE DRELL |
| | MAGISTRATE JUDGE PEREZ-MONTES |

---

## REPORT AND RECOMMENDATION

Before the Court is: (1) an Application for Reinstatement to practice before the Bankruptcy Court of the Western District of Louisiana filed by David Patrick Keating ("Keating"); and (2) a countervailing recommendation by United States Bankruptcy Judge Robert Summerhays to deny that Application and suspend Keating for at least one year. These matters were referred to the undersigned for report and recommendation pursuant to Local Rule 83.2.10 of the Local Rules for the United States District Court for the Western District of Louisiana ("LR 83.2.10").

Judge Summerhays originally suspended Keating for 90 days for making material misrepresentations in pleadings and during oral argument. Judge Summerhays then determined that Keating violated his suspension order by performing work for a client in another case, and by misrepresenting the extent of that work in sworn testimony. Keating challenges the legal basis of Judge Summerhays's original suspension order. Keating also maintains that the order could not have properly applied to his alleged conduct.

After careful and extensive consideration, this Court finds that Judge Summerhays's suspension order was legally sound, and properly applied to Keating's

conduct. Further, Keating's misconduct warrants additional sanctions. Therefore, the Court recommends that Keating be suspended for an additional period of one year, after which Keating may apply for reinstatement upon a showing that he has: (1) completed 12 hours of continuing legal education ("CLE") in ethics or professionalism; and (2) committed no ethical or professional infractions during his suspension.

## I.    Background

### A.    Factual Background

Keating's disciplinary issues derive from two bankruptcy cases before the Bankruptcy Court: In re New Century Fabricators, Inc., No. 14-50652 (the "New Century Case"), and In re Kevin Paul Brown, No. 15-50497 (the "Brown Case"). Judge Summerhays's most recent recommendation arose from Keating's misconduct in the Brown case. However, Keating's alleged misconduct relates to a suspension order entered in the New Century Case, and Keating's discipline must necessarily relate to the entire course of his conduct before Judge Summerhays. Thus, the New Century case necessarily informs this Court's decision as well.

#### 1.    Keating made material misrepresentations, and was sanctioned, in the New Century Case.

Keating's activities in the New Century case were controversial from the outset. (Doc. 1-1, p. 3). Before the bankruptcy filing, New Century's largest creditor, FCC, LLC dba First Capital ("First Capital"), filed a Petition for Appointment of a Receiver in the Fifteenth Judicial District Court in Lafayette Parish (the "Fifteenth JDC"). The Fifteenth JDC appointed a receiver. The Fifteenth JDC also granted

injunctive relief prohibiting New Century's managers from interfering with the receiver's activities.

In May 2014 – after the Fifteenth JDC issued the injunction – Keating filed a Chapter 11 bankruptcy petition for New Century. Judge Summerhays presided. First Capital and the receiver moved to dismiss the bankruptcy proceeding, arguing New Century lacked the authority to file it given the Fifteenth JDC's injunction. Keating opposed, claiming the injunction did not prohibit the bankruptcy filing. One of New Century's largest creditors also opposed the motion to dismiss. Judge Summerhays denied the motion to dismiss, but suspended the operation of 11 U.S.C. § 543 to allow the receiver to retain control of New Century.

The receiver and First Capital then moved to convert the case to Chapter 7. In response, Keating filed an "Application for Order Approving Appointment of Chapter 11 Trustee." In the Application, Keating claimed that: (1) Rusty Lamb of Lamb/Associates ("Lamb") wished to purchase most or all of New Century's assets for $4.4 million; (2) as a condition of the purchase, Lamb required that New Century remain a viable business entity in Chapter 11 bankruptcy, because New Century owned, and would lose, various master service agreements authorizing New Century to perform work for oil field companies upon conversion to Chapter 7; and (3) Lamb's intentions were memorialized in an unsigned "Letter of Intent," which was attached to the Application.

Judge Summerhays conducted a hearing on Keating's Application. During the hearing, Keating reiterated the averments in his Application. However, Lamb's

3

attorney, John Mouton ("Mouton"), appeared, testified, and contradicted many of Keating's representations. Further testimony revealed that the Letter of Intent was actually drafted by an independent business broker who was retained by, and working exclusively for, New Century, and not by Lamb or Mouton. Judge Summerhays denied the Application as moot and converted the case to Chapter 7.

Shortly after the hearing, Mouton filed an affidavit stating that Keating made material misrepresentations in the Application. Mouton noted that the "Letter of Intent" was not prepared by him, or by Lamb; was placed on "letterhead" intended to create the impression that it had come from Lamb; and would never have been signed by Lamb. The attorney also emphasized that the master service agreements referenced by Keating did not require termination after conversion to Chapter 7. Mouton suggested that Keating intended to mislead Judge Summerhays into concluding that conversion to Chapter 7 would destroy a proposed sale to Lamb, and would deprive New Century's creditors of a more substantial recovery.

First Capital filed a "Motion for Sanctions" against Keating under 28 U.S.C. § 1927 and 11 U.S.C. § 105(a). Judge Summerhays ordered Keating and New Century's principal, James Castille ("Castille"), to show cause why Keating should not be sanctioned. The Court conducted the hearing. Keating appeared and testified.

On April 1, 2015, Judge Summerhays issued an "Order on Motion for Sanctions and Order to Show Cause" (the "Suspension Order"). (Doc. 1-1). Judge Summerhays concluded that Keating had made at least four written misrepresentations regarding the Letter of Intent and the master service agreements, and had defended those

misrepresentations in open court.  Importantly, Judge Summerhays also concluded that – no later than the hearing on Keating's Application – Keating knew of, and failed to correct, his misrepresentations regarding the master service agreements.

Citing Bankruptcy Rule 9011(b) ("Rule 9011") and Rule 3.3 of the Louisiana Rules of Professional Conduct ("LRPC 3.3"), Judge Summerhays suspended Keating from practice before the Bankruptcy Court of the Western District of Louisiana for 90 days, imposed a monetary sanction of $15,000.00, and ordered Keating to complete 12 hours of continuing legal education in ethics or professionalism.

On April 7, 2015, Judge Summerhays issued a "Supplemental Order on Motion for Sanctions and Order to Show Cause" (the "Supplemental Suspension Order") (Doc. 1-2).  Just a day after the Suspension Order, Keating had appeared at a Section 341 meeting of creditors.  In the Supplemental Suspension Order, Judge Summerhays clarified that the Suspension Order applied "to any practice before the U.S. Bankruptcy Court, including Section 341 meetings."  (Id.).

On April 9, 2015, Judge Summerhays issued an "Order Regarding Suspension of David Patrick Keating" (the "Clarification Order"), which was intended to "provide some direction to the parties represented by Keating" in other bankruptcy proceedings.  (Doc. 1-3).  The Clarification Order contains five numbered provisions, each with separate instructions.  The fifth provision states:

> while Mr. Keating is not prohibited from communicating with his clients in bankruptcy cases for the purpose of assisting them in employing alternative counsel if necessary, his suspension bars him from providing legal advice regarding any bankruptcy cases as well as negotiating with other parties or providing any other legal representation in any bankruptcy case.

(Id., p. 2).

Keating did not appeal any of these orders, but instead, moved for Judge Summerhays to reconsider the 90-day suspension.  Meanwhile, Keating had also failed to disclose pre-petition compensation in the New Century Case under Bankruptcy Rule 2016 and 11 U.S.C. § 329.  Judge Summerhays ordered Keating to make the disclosure.  Keating disclosed that New Century had paid him $15,000.  On May 22, 2015, Judge Summerhays denied Keating's motion for reconsideration, ordered Keating to disgorge the $15,000 fee to First Capital, and instructed Keating to undergo an additional three hours of CLE in ethics or professionalism.  (Doc. 1-4, p. 9).

> 2.    **Keating provided legal services – and violated the Suspension Order – in the Brown Case.**

Keating was suspended on April 1, 2015.  Keating met with Kevin Paul Brown ("Brown"), a client in another case pending before Judge Summerhays, on April 8 and April 21, 2015.  These meetings were referenced in a Statement of Financial Affairs and Disclosure of Compensation later filed in the Brown Case.

On June 19, 2015, Judge Summerhays ordered Brown and Keating to submit affidavits detailing the dates and nature of their meetings.  (Doc. 1-5).  Brown and his new attorney, W. Simmons Sandoz ("Sandoz"), submitted affidavits confirming the meetings.  (Docs. 1-5, 1-6). Sandoz also stated that he received a file from Keating with approximately 20 documents – including schedules, pleadings, and a signed Chapter 13 Plan – prepared on Brown's behalf.  (Doc. 1-5).

Judge Summerhays set a show cause hearing. However, before the hearing, Keating's attorney, Leslie Schiff ("Schiff"), requested a conference with Judge Summerhays. Sandoz and the trustee in the Brown Case also attended. During the conference, Schiff informed Judge Summerhays that Keating was effectively closing his law practice, was the subject of an ongoing disciplinary proceeding in Louisiana, and was seeking employment in the oil industry in Texas. Schiff stated that he would resolve any outstanding issues with First Capital, and that a hearing in the Brown Case was not necessary.

At the conference, Judge Summerhays inferred that Keating was unlikely to resume his law practice in the near future, and that Keating's remaining disciplinary issues in the New Century Case would be resolved. Accordingly, on August 13, 2015, Judge Summerhays withdrew his June 19, 2015 order and cancelled the show cause hearing.

In less than four months, however, Keating lost his employment in the oil industry. On December 11, 2015, Keating filed an Application for Reinstatement. Keating stating that he had complied with all sanctions imposed in the New Century Case. Specifically, Keating agreed with First Capital to pay $15,000 of the total $30,000 owed, and had completed all required CLE. Keating did not address his work in the Brown Case.

On January 6, 2016, Judge Summerhays conducted a hearing on Keating's Application for Reinstatement. During the hearing, Keating admitted he met with Brown twice after his April 1, 2015 suspension. Keating explained that Brown was

facing an impending foreclosure proceeding. Keating claimed the meetings were necessary to protect Brown's interests and transition the case to Sandoz. Keating also claimed that the scope of Judge Summerhays's orders in the New Century case was unclear to him until he received the April 9, 2015 Clarification Order – after his April 8 meeting with Brown.

Keating also testified that he did not complete schedules on Brown's behalf during the April 8, 2015 meeting. But Sandoz's affidavit states that he received various signed documents – including pleadings, schedules, and a signed Chapter 13 plan – from Keating. The evidence therefore indicates that Keating and Brown completed crucial, substantive portions of the case on or after April 8, 2015.

Judge Summerhays found that Keating's work for Brown "exceeded the work required to facilitate an orderly transition of Mr. Brown's case to another lawyer, and thus violated" the Suspension Order.[1]  (Doc. 1, p. 10). Judge Summerhays also rejected Keating's argument that he was confused by the Court's prior orders. Judge Summerhays noted that the April 7 Supplemental Suspension Order prohibited "any practice before the U.S. Bankruptcy Court."  In Judge Summerhays's view, this language plainly prohibited the work performed by Keating at his April 8 meeting.

On February 18, 2016, Judge Summerhays: (1) denied Keating's Application for Reinstatement; and (2) pursuant to LR 83.2.10,  referred this matter to the Chief District Judge for the Western District of Louisiana, recommending that Keating be

---

[1] For ease of reference, and absent a specific need to do otherwise, the Court will hereafter refer only to Judge Summerhays's "Suspension Order."  However, it should be understood that the Supplemental Suspension and Clarification Orders – while separate documents – also governed Keating's suspension.

suspended for at least one additional year, not including the period of time following the lapse of Keating's original suspension. (Id., pp. 10-12).

B. **Procedural Background**

On March 21, 2016, Chief Judge Dee D. Drell referred this matter to the undersigned for report and recommendation. (Doc. 2). On March 5, 2016, this Court entered a Memorandum Order containing a briefing schedule and setting an evidentiary hearing for May 23, 2016. (Doc. 3).

Schiff originally represented Keating. However, on June 22, 2016, Schiff moved to withdraw, and to continue the evidentiary hearing. (Doc. 5). Schiff was concerned – as it turns out, correctly – that he may need to testify at the hearing. The Court granted the motions, continued the evidentiary hearing, and substituted Herbert V. Larson ("Larson") as Keating's attorney. (Doc. 6). Larson later requested, and was granted, a second extension of the evidentiary hearing. (Doc. 9). In accordance with the Court's orders, Larson also submitted a brief containing proposed findings of fact and conclusions of law. (Doc. 10).

On August 31, 2016, the Court conducted the evidentiary hearing. (Doc. 12). Keating and Schiff testified, and Larson submitted five documentary exhibits. (See Docs. 13-14). The Court has carefully considered all pertinent records, testimony, and evidence. Based upon that substantial record, the Court now rules as follows.

II. **Law and Analysis**

A. **The Court possesses inherent authority to suspend, and otherwise sanction, attorneys for misconduct.**

"'Federal courts enjoy the inherent power to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" _In re_ Goode, 821 F.3d 553, 558–59 (5th Cir. 2016) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).  Employing this inherent power, courts may discipline, suspend, and disbar attorneys.  See _In re_ Goode, 821 F.3d at 559; accord Resolution Trust Corp. v. Bright, 6 F.3d 336, 340 (5th Cir. 1993) ("It is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers.").  "Suspending an attorney is a 'quasi-criminal punishment' and 'any disciplinary rules used to impose this sanction . . . must be strictly construed resolving ambiguities in favor of the person charged.'" _In re_ Goode, 821 F.3d at 558 (quoting United States v. Brown, 72 F.3d 25, 29 (5th Cir. 1995)).  Moreover, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion."  Chambers, 501 U.S. at 44.

Courts may also sanction attorneys pursuant to local rules.  See _In re_ Goode, 821 F.3d at 558.  LR 83.2.10 sets forth this Court's procedures for imposing discipline, which include the preparation of this Court's report and recommendation.  However, LR 83.2.10 does not contain substantive provisions upon which discipline may be imposed.

### B.    Keating suggests Judge Summerhays committed four legal errors which undercut additional suspension.

Keating argues that Judge Summerhays committed four legal errors in the New Century and Brown Cases.  Aside from a motion to reconsider the length of his original suspension, Keating never challenged or appealed any of Judge

10

Summerhays's orders.  In fact, as Keating admits, he has complied with those orders, and has therefore rendered a legal challenge to them moot at this juncture.

Nevertheless, Keating suggests this Court should not impose additional discipline based upon Judge Summerhays's orders.  The Court cannot agree.

> 1. **<u>Although Bankruptcy Rule 9011 likely would not support the Judge Summerhays's award of monetary sanctions, the award was supported by other authority, was not challenged, and therefore, was not "illegal."</u>**

Keating first argues that, "insofar as it purported to award monetary sanctions to FCC . . . pursuant to Federal Rule of Bankruptcy 9011 ["Rule 9011"], the April 1, 2015 [Suspension] Order . . . was an illegal order."  (Doc. 10, p. 13).  Keating maintains that First Capital did not move for sanctions under Rule 9011; any such motion would have been untimely; any such motion would have required compliance with a 21-day "safe harbor" provision; and a bankruptcy court cannot impose sanctions in favor of a third party absent a motion.

First, and most importantly, Keating did not challenge Judge Summerhays's decision to impose monetary sanctions.  In fact, the issue of monetary sanctions is not disputed before this Court in any respect.   Keating concedes as much.  The Court considers the issue only to the extent that it underlies Keating's history before Judge Summerhays.

To that end, Keating is correct that First Capital did not cite Rule 9011 in its motion for sanctions.  Rather, First Capital requested sanctions under 28 U.S.C. § 1927 and 11 U.S.C. § 105(a).  Under the former statute, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required

by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Under the latter, a court may, "sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). First Capital also generally requested a punitive monetary award, an investigation into Keating's fitness to practice law, a refund of his retainer, costs and expenses of all parties and counsel, and any additional sanctions the Court believed were appropriate.

To be clear, the Court's award of monetary relief was justifiable under § 1927, § 105(a), and the Court's inherent authority. See, e.g., In re Stomberg, 487 B.R. 775, 817 (Bankr. S.D. Tex. 2013) ("Rather, § 105 is meant to 'fill in the interstices' that rules such as 9011(c) do not fill."). However, to the extent Judge Summerhays awarded monetary sanctions under Rule 9011, Judge Summerhays's reliance upon Rule 9011 was likely misplaced. Keating first maintains that because First Capital did not move for sanctions under Rule 9011, the Court erred in awarding sanctions at all. Absent a motion, however, Rule 9011(c)(1)(B) authorizes a bankruptcy court, "[o]n its own initiative . . . [to] enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto."

Judge Summerhays raised Rule 9011 sua sponte. But, "[w]here the court initiates the award of sanctions by a show cause order, monetary sanctions are limited to the award of a penalty payable to the court. The court has no discretion to

award monetary sanctions payable to an opponent in such circumstances." <u>In re Crofford</u>, 301 B.R. 880, 887 (B.A.P. 8th Cir. 2003). Again, to that limited extent, Judge Summerhays's order to pay $15,000 to First Capital likely exceeded the scope of Rule 9011(c), in that any monetary award should have been payable to the court.[2]

Keating argues that Judge Summerhays imposed monetary sanctions under Rule 9011 alone. It is true that Rule 9011 is the only provision Judge Summerhays specifically referenced in the portion of his ruling awarding monetary sanctions. However, Judge Summerhays's references to Rule 9011 were not necessarily exclusive of the other authority available to him and cited in First Capital's motion. Nor is this Court's analysis confined to Rule 9011, as multiple sources of authority were invoked and at issue before Judge Summerhays.

Given Keating's failure to challenge the award of monetary sanctions imposed – and given Judge Summerhays's additional authority to impose sanctions under 28 U.S.C. § 1927, 11 U.S.C. § 105(a), and his inherent powers – this Court does not conclude that Judge Summerhays's award of monetary sanctions was "illegal." Even so, this issue is not dispositive of any sanctions to be imposed at this point.

### 2.    <u>Judge Summerhays found Keating acted in bad faith.</u>

Keating next argues that Judge Summerhays was required to, but did not, find that Keating acted in "bad faith." Keating misconstrues both the relevant standard and Judge Summerhays's findings.

---

[2] Keating correctly notes that, when Rule 9011 sanctions are suggested by motion, a 21-day "grace period" must be observed. Keating's argument presupposes that Rule 9011 was necessarily "read into" First Capital's motion for sanctions, rather than raised sua sponte. The Court does not share Keating's presupposition.

"It is well settled that in order for a federal court to sanction an attorney under its inherent powers, it must make a specific finding that the attorney acted in bad faith." In re Goode, 821 F.3d at 559. "Bad faith 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." Richard v. Inland Dredging Co., LLC, 6:15-0654, 2016 WL 5477750, at *2 (W.D. La. Sept. 29, 2016) (quoting Turfgrass Group, Inc. v. Northeast Louisiana Turf Farms, LLC, 2013 WL 6145294, *3 (W.D. La. 2013)). In this context, bad faith must be "judged by 'necessarily stringent' standards." Pressey v. Patterson, 898 F.2d 1018, 1021 (5th Cir.1990) (quoting Batson v. Neal Spelce Associates, Inc., 805 F.2d 546, 550 (5th Cir. 1986)).

However, it is also settled that "specific findings [of bad faith] are unnecessary to understand the misconduct giving rise to [a] sanction, [w]hen bad faith is patent from the record and may be inferred." In re Deepwater Horizon, 643 Fed.Appx. 377, 383 (5th Cir. 2016) (quoting In re Sealed Appellant, 194 F.3d 666, 671 (5th Cir.1999)) (internal quotation marks omitted); accord Howard v. Offshore Liftboats, LLC, 13-4811, 2016 WL 2865889, at *8 (E.D. La. May 17, 2016) ("District courts need not make a specific finding of bad faith in every case in which sanctions may be warranted."). For instance, a court's finding that parties committed fraud may constitute a finding of bad faith. See In re Deepwater Horizon, 643 Fed.Appx. at 383. Likewise, a court's finding that an attorney testified falsely or was deliberately misleading under oath is tantamount to a finding of bad faith. In re Sealed Appellant, 194 F.3d at 672, n. 16

(and cases cited therein).  Stated otherwise, when the record is clear, no "magic words" need be written or spoken.  See LaPrade v. Kidder Peabody & Co., Inc., 146 F.3d 899, 906 (D.C. Cir. 1998).

Here, Judge Summerhays did not use the phrase "bad faith" in any of his sanctioning orders.  But the record is littered with findings tantamount to bad faith. In the April 1, 2015 Suspension Order, Judge Summerhays concluded that Keating made a number of "false or misleading" "misrepresentations."  (Doc. 1-1, pp. 7-9, 11). Judge Summerhays held that Keating "made a knowing misrepresentation about his belief that Mr. Blackstone was serving as Mr. Lamb's attorney," committed an "extreme departure" from his duties under Rule 9011, and violated his duty of candor under LRPC 3.3.  (Id., p. 16).

At points, Judge Summerhays prefaced findings with phrases like the following: "Even if the record does not establish that Mr. Keating acted knowingly or intentionally . . . ."  (Id.).   Keating construes these phrases as disavowals of a bad faith finding.  The Court does not.  Judge Summerhays's language was clearly meant to be alternative, rather than conclusive, in nature.  And to employ the same device, even if Judge Summerhays had not concluded Keating acted intentionally, Judge Summerhays certainly concluded that Keating failed to correct misrepresentations once they were discovered.  That finding alone would be sufficient to imply bad faith.

Further, in the May 22, 2015 order denying Keating's motion for reconsideration, Judge Summerhays rejected the notion that Keating's actions were unintentional or incidental: "This case does not involve merely an isolated mistake

made in the course of zealously representing a client.  This case involves a pattern of multiple misrepresentations made in pleadings and oral arguments to the court . . . ."  (Doc. 1-4, p. 5).  Judge Summerhays further concluded that Keating's violations "strike at the integrity of the judicial process and the role of a lawyer as an officer of the court."  (Id., p. 7).  And in the February 18, 2016 order denying Keating's Application for Reinstatement, Judge Summerhays found that Keating misrepresented the extent of the work he performed for Brown, and violated the Suspension Order.  (Doc. 1, pp. 10-11).

Judge Summerhays's findings of bad faith are patent from the record, and may therefore be plainly inferred.  Keating's argument is without merit.

### 3.    Additional discipline may be imposed based upon the Suspension Order.

Next, Keating – curiously, but to his credit – admits that he did not challenge the monetary *or non-monetary* sanctions imposed by Judge Summerhays against him.  Thus, any such challenge is now moot.  But Keating then maintains that, because of his previous two arguments, the Suspension Order "cannot be used as the legal basis for the imposition of further discipline."  (Doc. 10, p. 15).

As noted above, the Court does not conclude that the monetary sanctions imposed in the Suspension Order were "illegal."  But that determination is, frankly, unnecessary beyond its function as background information.  Keating's monetary sanctions are not at issue; Keating's suspension is.  And Keating has never argued his suspension was "illegal," only "excessive."  Moreover, the Court *has* determined

that Judge Summerhays reached the requisite bad faith finding to impose suspension.

Keating's original 90-day suspension was well-founded, and Keating's previous arguments do not disqualify the Suspension Order as a basis for additional sanctions.

### 4.   The Suspension Order properly applied to Keating's conduct in the Brown Case.

Finally, Keating claims that Judge Summerhays did not "have the authority to regulate the practice of law generally." (Doc. 10, p. 15). More specifically, Keating states that "what [he] did in his office, in his private practice, could not be regulated by a judge of the Bankruptcy Court, unless it was a matter which pertained to a proceeding in that court." (Doc. 10, p. 15).

During oral argument, the undersigned attempted to clarify this argument further. Keating agrees that his meetings with Brown constituted "practicing law." There is no dispute that the meetings produced pleadings, schedules, and a Chapter 13 Plan. Keating also seems to agree that, had the Brown case been filed before the April 8, 2015 meeting, Judge Summerhays could have regulated the content of that meeting. As it was, Sandoz filed the Brown Case on April 25, 2015 – shortly after Keating's second meeting with Brown. Keating's argument, then, hinges upon the argument that the Brown Case had not yet been filed at the time of his meetings with Brown.

Keating cites no authority which directly supports this proposition, and the Court finds none. Rather, Keating selectively emphasizes language in a Fifth Circuit decision: "A district court has the inherent authority to impose sanctions '*in order to*

*control the litigation before it.*'"  Positive Software Sols., Inc. v. New Century Mortgage Corp., 619 F.3d 458, 460 (5th Cir. 2010) (internal citation and quotation omitted) (emphasis in brief).  Again, curiously, but to his credit, Keating also quotes the next sentence of the opinion: "The court may also use that power to sanction conduct . . . if it is in direct defiance of the sanctioning court . . . or constitutes disobedience to the orders of the Judiciary." Positive Software Sols., Inc., 619 F.3d at 460.  This opinion simply does not limit the court's authority in the manner Keating suggests.  In fact, other opinions indicate the opposite.

The Supreme Court has noted that the Court's inherent sanctioning power applies to "both conduct before the court and that beyond the court's confines." Chambers, 501 U.S. at 44.  The Fifth Circuit described the scope of Chambers as follows: "[T]he Chambers Court authorized sanctions reaching 'beyond the court's confines' expressly with the purpose of allowing courts to sanction parties for conduct that was not 'merely the disruption of court proceedings' and not limited to 'disobedience [that] interfered with the conduct of trial' — to address problems arising from 'disobedience to the orders of the Judiciary.'" F.D.I.C. v. Maxxam, Inc., 523 F.3d 566, 591, 593 (5th Cir. 2008) (internal citations and quotations omitted) (holding that a district court did not have the authority to sanction for "underlying conduct that the district court found distasteful, such as paying the OTS to bring a case in administrative court").

Other opinions are in accord.  In Sandifer v. Gusman, the Fifth Circuit approved sanctions for an attorney who defied a court's order denying his motion to

18

enroll in a lawsuit. 637 Fed.Appx. 117, 119 (5th Cir. 2015). The attorney

subsequently filed two related lawsuits with co-counsel. See id. The attorney drafted,

but did not actually sign, the third complaint. See id. at 120-21. The court ruled as

follows:

> Here, we cannot say the district court abused its discretion in
> sanctioning Wilson for violating the court's previous orders. Violating
> those orders constitutes bad faith. And based on the record as a whole,
> we cannot say that the district court made a mistake in finding that
> Wilson violated those orders. Indeed, while Wilson contends that
> "[t]here was no knowledge on [his part] that enrolling in [*Sandifer III*]
> when it was pending before another [judge of the district court] was not
> authorized," the district court had already admonished Wilson for a
> similar act in *Sandifer II*. After Wilson filed *Sandifer II*—noting in the
> civil cover sheet that *Sandifer I* was related—*Sandifer II* was
> transferred to the district court judge that presided over *Sandifer I*. The
> district court then struck Wilson from the record as counsel in *Sandifer
> II*, expressly stating that "it appears to [the district court] that [Wilson]
> clearly attempted to and did make an end run around [the *Sandifer I*
> order] by filing another suit." Subsequently, Wilson attempted to
> obscure his involvement by filing *Sandifer III* with the complaint signed
> only by Settle, but the complaint "was marked deficient" because it was
> signed and filed by different attorneys. Settle re-filed *Sandifer III*, and
> Wilson then moved to enroll as co-counsel when "[Wilson] presumed that
> there had been a decision made not to transfer it [to the district court
> judge that handled the previous actions]." Each of Sandifer's actions
> involved related claims by Sandifer arising out of her previous
> employment with the Sheriff's Office, and the district court ultimately
> required Settle to file a consolidated complaint. Based on the record as
> a whole, "the district court's account of the evidence is plausible," and
> therefore the court did not abuse its discretion in sanctioning Wilson for
> his bad faith in violating the past orders.

Id. at 122.

Relatedly, in *In re: Deepwater Horizon*, the court sanctioned an attorney for

misconduct in the administration of a court-supervised settlement program. *In re:
Deepwater Horizon*, 824 F.3d 571, 575 (5th Cir. 2016). The attorney argued that "the

19

district court lacked inherent power to sanction him because his actions 'were not before the District Court and cannot be said to have constituted the requisite disobedience or 'direct defiance' within the District Court's purview to sanction." Id. at 578.    The court disagreed, noting that it directly supervised, and retained jurisdiction over, the settlement program.    See id.

The Court sees no meaningful distinction between this case and Sandifer or In re: Deepwater Horizon.    It is undisputed that Judge Summerhays possessed the inherent authority to suspend Keating from practicing law before his court.    On April 7, 2015, Judge Summerhays did so by ordering Keating suspended from "any practice before the U.S. Bankruptcy Court."    (Doc. 1-2).    On April 8 and April 21, 2015, Keating: (1) met with a client regarding a case to be filed before Judge Summerhays; and (2) assisted that client in drafting, finalizing, and signing crucial pleadings, schedules, and a Chapter 13 Plan which were ultimately filed before Judge Summerhays through another attorney, Sandoz.    In drafting a third complaint to be signed by someone else, the attorney in Sandifer did – and was sanctioned for – essentially the same thing.

Keating admits he was "practicing law."    Keating's only remaining argument – that Brown's case must have been filed before sanctions could have been appropriate – has no direct support in the jurisprudence, and invites absurd results. As a matter of law, Keating's argument implies that Judge Summerhays's authority derives from some particular aspect of a pending case.    That is simply incorrect. Courts' inherent authority derives, in the first instance, "'from the nature of their

institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" <u>Chambers</u>, 501 U.S. at 43 (quoting <u>United States v. Hudson</u>, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)). That inherent authority must precede, and supersede, any particular filing in a case, as long as it is exercised with appropriate restraint and jurisdiction.

Further, Judge Summerhays only sanctioned Keating after the pleadings were filed and Keating's participation was discovered. Keating's conduct was therefore tethered to a proceeding pending before Judge Summerhays. That his conduct technically preceded the first *filing* is, in this Court's view, not controlling.

As a matter of fact, if Keating's argument were correct, then Keating could have been drafting documents at will in cases to be (but not yet) filed before Judge Summerhays. Keating could then have passed those filings along to Sandoz or others, all without consequence. That result would eviscerate Judge Summerhays's order, along with the court's inherent authority to control the practice of law before it. In other words, Keating argues that drafting *initial* pleadings *is not* "practicing law before a court," but drafting *mid-case* pleadings *is* "practicing law before a court." If so, courts would be powerless to control any misconduct in a case which happens to occur before a case is actually filed – even if the same misconduct could be sanctioned after the case is filed. That is not an acceptable result.

Viewed from any of these perspectives, Keating's argument must fail. Judge Summerhays's Suspension Order may properly be applied to Keating's conduct in the Brown case. And Keating violated the Suspension Order.

**C.**    **Keating should be suspended for an additional one year, and should be reinstated upon completing 12 hours of CLE and committing no other ethical infractions.**

All that remains is to determine the proper sanction.  Neither the Louisiana Rules of Professional Conduct nor this Court's Local Rules provide specific guidance on appropriate sanctions.  Accordingly, the Court looks to the ABA'S Standards for Imposing Lawyer Sanctions (the "ABA Standards").  See *In re* Sealed Appellant, 194 F.3d at 673.  In making this determination, the Court considers "the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors."  Id. (citing ABA Standard 3.0).

The first three factors are relatively straightforward.  Keating violated Bankruptcy Rule 9011, LRPC 3.3, and Judge Summerhays's orders.  Aside from the issues of intent and interpretation, there is no indication that Keating's mental state had any bearing upon his decisions.

Further, Keating's misconduct caused at least some actual and potential injury.  But the amount of actual injury was likely limited by Judge Summerhays's orders.  Keating disgorged presumably all attorney's fees required of him, and compensated First Capital, at least in part, for expenses incurred.  However, the Court presumes that First Capital lost at least some money in the New Century Case, and that the ancillary participants in Keating's proceedings – including Lamb and Mouton – incurred expenses and inconvenience.  Keating certainly compelled Judge Summerhays and the Bankruptcy Court to invest significant time and resources

22

which could have been directed elsewhere.   As to potential injury, Keating's misrepresentations in the New Century Case also may have permanently altered the nature of that proceeding, possibly to the detriment of New Century's creditors. Other financial losses – to First Capital, Lamb, or others – may have resulted as well.

The fourth factor – aggravating and mitigating circumstances – is more complex.   ABA Rules 9.22 and 9.32 list aggravating and mitigating circumstances that may be considered.   A number of mitigating circumstances are present.   Keating has no prior disciplinary record.   Aside from his meetings with Brown, Keating substantially complied with the sanctions imposed by Judge Summerhays.   Keating paid all fines, disgorged all disputed fees, and, eventually, attended all required CLE courses.   "[F]orced or compelled restitution" should not be considered a mitigating circumstance.   See ABA Rule 9.4(a).   But the Court notes that Keating did not actively resist those elements of discipline.

The Court also considers Keating's duties to his clients.   Judge Summerhays's Clarification order was intended, in part, to instruct Keating in transitioning his cases to other counsel.   Some of Keating's clients, including Brown, needed rapid and meaningful assistance.   Keating attempted to transition cases to Sandoz in light of Judge Summerhays's order, and the Court understands the importance of Keating's obligation to do so competently.   Keating wisely consulted other attorneys in the process, which again indicates an attempt to comply.

However, the aggravating circumstances are significant.   One overarching pattern stands out.   From the outset of the New Century Case, Keating insisted upon

23

parsing court orders as narrowly, and as self-beneficially, as possible.  He read the Fifteenth JDC's receivership order to allow the bankruptcy filing.  He read the Suspension Order to allow him to appear at Section 341 meetings.  And he read the Supplemental Suspension Order and/or Clarification Order to allow him to meet with Brown, and to prepare and finalize schedules, pleadings, and a Chapter 13 Plan in the Brown Case.  This pattern indicates a willful resistance to the judiciary's authority.  And Keating still disputes that much of his conduct was wrongful or intentional.

Additionally, the Brown Case followed sanctions in the New Century Case.  An original suspension of 90 days – along with substantial monetary and non-monetary sanctions – did not deter Keating's subsequent misconduct.

Most importantly, Keating made a number of clear misrepresentations to Judge Summerhays.  At a minimum, Keating distorted facts concerning the master service agreements and the Letter of Intent in the New Century Case, and misstated the scope of his work in the Brown Case.  Keating's decision to perform the work for Brown certainly violated Judge Summerhays's order.  Keating can argue – tenuously, but he can argue – that on April 8, 2015, he did not consider that work to be "practicing law before the court" within the scope of Judge Summerhays's order, or that the order itself was too broad in scope. This Court rejects both arguments.  But Keating again compounded his error by testifying before Judge Summerhays that schedules had not been completed for Brown, when Sandoz's affidavit specifically stated the contrary.

As it must, this Court views Keating's misrepresentations to Judge Summerhays with the utmost seriousness.  An attorney's duty of candor is paramount.  Keating's several decisions to compromise that duty are the most troubling aspects of this case.

Under these circumstances, a suspension comports with the ABA Standards 6.12, 7.2, and 8.2:

> Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

> Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

> Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

ABA Standard 2.3 recommends that suspensions should last between six months and three years.  A suspension of one year would be in keeping with other decisions in our circuit.  See, e.g., _In re_ Nalls, 124 Fed.Appx. 232, 234 (5th Cir. 2005) (affirming an attorney's 18-month suspension for "unreasonably and vexatiously multiplying these proceedings; and for submitting pleadings, motions and other papers that: (i) caused unnecessary delay and needlessly increased the cost of litigation; (ii) set forth claims and legal contentions that were not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law; and (iii)

contained allegations and other factual contentions lacking evidentiary support"); *In re Moity*, MISC. 07-0001, 2008 WL 104209, at *11 (W.D. La. Jan. 9, 2008), subsequently aff'd, 320 Fed.Appx. 244 (5th Cir. 2009) (recommending a one-year suspension, along with other sanctions, for an attorney's unprofessional conduct toward court staff, and sworn testimony at a contempt hearing which appeared to be inconsistent with representations at hearings in state court proceedings).[3] Therefore, Keating should be suspended for one year.

Finally, ABA Standard 2.3 states that "a lawyer who has been suspended should not be permitted to return to practice until he has completed a reinstatement process demonstrating rehabilitation, compliance with all applicable discipline or disability orders, and fitness to practice law." Accordingly, Keating must apply for reinstatement once his suspension is complete. Keating must certify in his application that he has completed 12 hours of CLE in ethics or professionalism, and has committed no ethical or professional infractions during his suspension.

## III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that David Patrick Keating's right to practice law before the United States Bankruptcy Court for the Western District of Louisiana be suspended for a period of one year, and that he be allowed to apply for reinstatement on or after November 17, 2017.

---

[3] See also *In re Marshall*, 3:15-MC-88-JWD, 2016 WL 81484, at *12 (M.D. La. Jan. 7, 2016) (suspending an attorney for 60 days for, among other things, failing to comply with 11 court orders, failing to submit a status report, missing a scheduling conference, untimely discovery responses, and late appearances at two show cause hearings); *In re Nixon*, 6-10-MC-00009, 2012 WL 1833926, at *1 (W.D. La. May 18, 2012) (recommending disbarment for an attorney who habitually made late, or no, filings in social security cases after a one-year probationary period for similar conduct).

IT IS FURTHER RECOMMENDED that, as a precondition to reinstatement, David Patrick Keating certify to the Court that he has completed 12 hours of CLE in ethics or professionalism, and has committed no ethical or professional infractions during his suspension.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____16th_____ day of November, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge

27